Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000492
30-OCT-2017
09:03 AM

NO. CAAP-16-0000492

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
LARRY CASS RAGASA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 10-1-0317)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Larry Cass Ragasa (**Ragasa**) appeals from the Judgment of Conviction and Sentence (**Judgment**) filed on June 1, 2016, in the Circuit Court of the Fifth Circuit (**Circuit Court**).[1] Following a jury trial, Ragasa was convicted of two counts of Sexual Assault in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-730(1)(c) (2014)[2] (Counts 1

---

[1] The Honorable Kathleen N. A. Watanabe presided.

[2] HRS § 707-730 provides in relevant part:

> **§ 707-730. Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:
> . . . .
>
> (c) The person knowingly engages in sexual penetration with a person who is at least fourteen years old but less than sixteen years old; provided that:

(continued...)

and 2); and one count of Sexual Assault in the Fourth Degree, in violation of HRS § 707-733(1)(b) (2014)[3] (Count 4). Ragasa was sentenced to concurrent, twenty-year terms of imprisonment as to Counts 1 and 2, and a concurrent, one-year term of imprisonment as to Count 4.

Ragasa raises five points of error on appeal, contending that the Circuit Court erred when it: (1) admitted evidence of uncharged allegations of sexual contact; (2) admitted the expert testimony of Dr. Alexander Bivens (**Dr. Bivens**); (3) did not instruct the jury on the requirement of unanimity as to a specific act; (4) denied Ragasa's motion for judgment of acquittal on Counts 1 and 2; and (5) denied Ragasa's motion for a new trial.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to

---

[2](...continued)

      (i)    The person is not less than five years older than the minor; and
     (ii)   The person is not legally married to the minor[.]

. . . .

    (2)   Sexual assault in the first degree is a class A felony.

[3]    HRS § 707-733 provides in relevant part:

**§ 707-733. Sexual assault in the fourth degree.** (1) A person commits the offense of sexual assault in the fourth degree if:
    . . . .
    (b)    The person knowingly exposes the person's genitals to another person under circumstances in which the actor's conduct is likely to alarm the other person or put the other person in fear of bodily injury[.]
    . . . .
    (2)    Sexual assault in the fourth degree is a misdemeanor.

the arguments advanced and the issues raised by the parties, we resolve Ragasa's points of error as follows:

(1)     Ragasa argues that the Circuit Court erred when it admitted testimony about uncharged allegations of sexual contact with the complaining witness (CW), which allegedly occurred both before and after the alleged criminal conduct, on the grounds that the testimony constituted inadmissible character evidence and that it was highly prejudicial and minimally probative. Rule 404(b) of the Hawaiʻi Rules of Evidence (HRE) provides:

> **Character evidence not admissible to prove conduct; exceptions; other crimes. . . .** (b) Other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.  In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

This rule prohibits "the admission of evidence introduced for the sole purpose of establishing that a defendant possesses a criminal character and acted in conformity with that character.  Although such evidence may not be used solely for the purpose of establishing criminal propensity, under certain circumstances it may be offered to prove other facts of consequence."  State v. Behrendt, 124 Hawaiʻi 90, 102, 237 P.3d 1156, 1168 (2010).  "To the extent evidence of crimes, wrongs, or acts is being offered for a permissible purpose, it is only admissible if the evidence is both relevant and its probative value is not substantially outweighed by its prejudicial effect."

State v. Calara, 132 Hawai'i 391, 406, 322 P.3d 931, 946 (2014) (citation omitted).

In Behrendt, the Hawai'i Supreme Court addressed the admissibility of the defendant's prior sexual interaction with the complaining witness in a case of child sexual abuse. 124 Hawai'i at 102-08, 237 P.3d 1168-74. There, the defendant was convicted of three counts of sexual assault in the third degree for sexually assaulting his sister-in-law when she was between fourteen and sixteen years old. Id. at 93, 237 P.3d at 1159. At trial, the victim described how the sexual abuse developed, starting when she was eleven, and the things the defendant said to keep her from telling anyone. Id. at 95-96, 237 P.3d at 1161-62. The victim's sister also testified about her observations of the victim and the defendant during the years prior to the criminal offenses. Id. at 97-98, 237 P.3d at 1163-64. The defendant testified and denied any sexual contact. Id. at 99, 237 P.3d at 1165. The supreme court held that this evidence of uncharged allegations of sexual conduct was relevant to show the defendant's opportunity to commit the charged sexual assaults without being detected. Id. at 104, 237 P.3d at 1170. Dr. Bivens also testified in Behrendt, about delayed reporting and the four "primary processes" abusers use (i.e., seduction and testing, masking sex as a game, emotional and verbal coercion, and taking advantage of a child in a vulnerable position). Id. at 98-99, 237 P.3d at 1164-65. The supreme court explained that the testimony of the victim and Dr. Bivens "provided the

evidentiary foundation for that non-character use of the evidence." Id. at 105, 237 P.3d at 1171.

Here, the prior sexual contacts between CW and Ragasa were relevant to establish Ragasa's opportunity to engage in sex acts with CW when she was in ninth grade (Counts 1 & 2) and when she was in her early twenties (Counts 3 & 4) without her protesting, running for help, or immediately reporting the incidents. CW testified that Ragasa first explored CW's willingness to engage in sexual conduct when CW was in middle school by exposing himself to her when she hid a television remote from him, then he repeatedly exposed his penis to her, acting "[l]ike it was fun," then he touched her breasts and her vagina, and he later progressed to vaginal penetration and fellatio. CW's testimony also suggested that Ragasa used coercion to keep CW from telling her family when he implied that their families would be hurt if anyone found out and when he told her not to write in her journal about it. The testimony included that Ragasa approached CW when she was in a "vulnerable position" - when she was sleeping. In sum, the evidence of uncharged sexual contacts was relevant to show that by the time of the charged offenses, CW had become acclimated to the sexual contact, and explained her failure to run away, protest, or report the incidents right away. Therefore, the State articulated a permissible purpose for the evidence, i.e., establishing Ragasa's opportunity to commit the offenses without being detected.

We reject Ragasa's assertion that Behrendt is distinguishable because "the fact that [Ragasa] and CW had sexual

contact was not even disputed in this case." The record shows that Ragasa did not present any evidence and did not stipulate to any facts. Although Ragasa's defense counsel stated, during opening statements, that Ragasa and CW had an "affair," the Circuit Court properly instructed the jury that the lawyers' opening and closing statements were not evidence. The State had the burden of proving beyond a reasonable doubt every element of the offenses charged against Ragasa and Ragasa's assertion on appeal that there was no need for the State to prove the sexual contact is without merit. See HRS § 701-114 (2014).

We also reject Ragasa's argument that the State elicited testimony about extensive uncharged legal, sexual contact that happened well after the alleged offenses. We find no testimony regarding sex acts occurring after the incidents alleged in Counts 3 and 4.

We next consider whether the probative value of the evidence was "substantially outweighed" by the danger of unfair prejudice to Ragasa. See Haw. R. Evid. 403. When weighing probative value versus prejudicial effect in this context, a court must consider a variety of factors, including:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

Behrendt, 124 Hawai'i at 106, 237 P.3d at 1172 (citation omitted).

It appears that the evidence of uncharged sex acts was necessary in this case to establish the progression of Ragasa's

behaviors and to explain CW's delayed reporting of the sexual acts charged in Counts 1 and 2, including Ragasa's "playful" seduction and testing of CW and his development of a relationship of trust and control over her as the sexual conduct evolved. In addition, the prior sexual activity between Ragasa and CW helped explain why, in 2010, Ragasa would aggressively expose himself to CW, pulling away a blanket she used to cover her face, and masturbate. The evidence of the uncharged sexual conduct gave context to the charged incidents and helped explain why CW's memory of the first incidents and the most recent incidents were most clear.

Contrary to Ragasa's argument that the Behrendt case and Dr. Bivens's testimony are applicable only to cases involving young children, rather than 16 year-old adolescents, Behrendt and Ragasa were both charged for incidents that occurred when the complaining witness was fourteen or fifteen years old, but not charged for prior abuse, which allegedly began in middle school. See Behrendt, 124 Hawai'i at 93, 237 P.3d at 1159. Although Behrendt did not involve additional charges or sexual assault allegations after the complaining witness was sixteen, we reject Ragasa's argument that the presence of those facts here render the prior bad act evidence inadmissible, as it appears that CW's testimony was highly probative, as discussed above, and more probative than prejudicial, as the Circuit Court necessarily determined in denying Ragasa's motion *in limine*. Therefore, we conclude that the Circuit Court did not abuse its discretion, or otherwise err, in allowing this testimony.

(2) Ragasa argues that the Circuit Court erred when it admitted the testimony of Dr. Bivens because, Ragasa argues, the defense did not contest the fact of sexual contact, only the age of CW at the time the charged felony conduct allegedly occurred.

First, it does not appear that Ragasa objected to Dr. Bivens's testimony, generally, on the grounds that it was irrelevant because Ragasa admitted that all of the acts of sexual contact occurred and only disputed when they occurred. In addition, as noted above, there is no evidentiary stipulation in this case. Nor did Ragasa file an opposition to the State's Notice of Intent regarding Dr. Bivens's testimony. The "general" concern raised by Ragasa was that Dr. Bivens's answers should not exceed the scope of the prosecution's questions. The court instructed the State to caution Dr. Bivens.

HRE Rule 103(a)(1) requires a "specific" objection or a motion to strike if the ground is "not apparent from the context." State v. Kony, 138 Hawai'i 1, 10, 375 P.3d 1239, 1248 (2016). We reject Ragasa's contention that his objection to the "general relevance" of Dr. Bivens's testimony was apparent from the context of the proceedings. Ragasa did not seek to exclude Dr. Bivens's testimony, in whole or in part, before trial in his motion in *limine* or otherwise. Ragasa's comment to the Circuit Court that he did not want Dr. Bivens to testify about "all areas of child sex assault, only the ones relevant to this case" did not notify the Circuit Court of what testimony Ragasa found objectionable.

Ragasa argues that Dr. Bivens's testimony was both irrelevant and not recognized science. The supreme court has recognized that expert testimony assists the trier of fact by providing "a resource for ascertaining truth in relevant areas outside the ken of ordinary laity." State v. Batangan, 71 Haw. 552, 556, 799 P.2d 48, 53 (1990) (citation omitted)). In Batangan, the supreme court held that "sexual abuse of children is a particularly mysterious phenomenon, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse." Id. at 557, 799 P.2d at 51 (citations and internal quotation marks omitted). The supreme court explained that child victims can exhibit behavior "seemingly inconsistent with behavioral norms of other victims of assault[,]" such as delayed reporting and recantation of abuse allegations, which would normally "be attributed to inaccuracy or prevarication." Id. In such situations, the supreme court stated, "it is helpful for the jury to know that many child victims of sexual abuse behave in the same manner." Id. at 557, 799 P.2d at 52. In this way, expert testimony can explain to the jury "the unique interpersonal dynamics involved in prosecutions for intrafamily child sexual abuse" and correct "widely held misconceptions . . . so that [the jury] may evaluate the evidence free of the constrains of popular myths." Id. at 557-58, 799 P.2d at 52 (internal quotation marks and citations omitted; ellipses in original). The supreme court concluded that expert testimony explaining "'seemingly bizarre' behavior of child sex

abuse victims is helpful to the jury and should be admitted."
Id. at 558, 799 P.2d at 52.[4]

Here, the record contains ample evidence that Dr.
Bivens was qualified to opine on the dynamics of sexual abuse of
children. Dr. Bivens testified, *inter alia*, that he has a Ph.D.
in clinical psychology, professional experience in counseling and
treating children and adolescents, some of whom were victims of
sexual abuse, that he keeps current on research and articles in
the field of child sexual abuse, and that his expert testimony
was based on multiple scientific studies. We note that Hawai'i
courts have recognized the valuable assistance to the trier-of-
fact of such expert testimony and Dr. Bivens has been qualified
many times as an expert in cases involving child sexual abuse
victims. See, e.g., Behrendt, 124 Hawai'i at 98-99, 237 P.3d at
1164-65; Kony, 138 Hawai'i at 9, 375 P.3d at 1247; State v.
McDonnell, No. SCWC-14-0000355, 2017 WL 3700812, *4 (Haw. Aug.
28, 2017); State v. Moisa, No. 30712, 2012 WL 247963, *2 (Haw.
App. Jan. 25, 2012)(SDO); State v. Pacheco, No. CAAP-11-0000571,
2012 WL 5990275, *2 (Haw. App. Nov. 30, 2012)(SDO).

Ragasa further argues that Dr. Bivens's testimony was
irrelevant because it was based, in part, on a study involving
prepubescent girls, likely under the age of thirteen, and that it
improperly bolstered CW's credibility about the dates of the
uncharged and/or charged conduct. Again, Ragasa did not object
to Dr. Bivens's testimony about this study or move to strike it.

---

[4] In Kony, the supreme court confirmed that Batangan does not exempt
expert testimony concerning child sexual abuse victims from the weighing
required by HRE Rule 403. Kony, 138 Hawai'i at 11, 375 P.3d at 1249.

Thus, any error in the admission of this evidence was waived. See, e.g., Kony, 138 Hawai'i at 10-11, 375 P.3d at 1248-49. In any case, Dr. Bivens's testimony was helpful in understanding, inter alia, delayed reporting of abuse, recognized abuse processes, and common memory patterns among child sexual abuse victims. See, e.g., Behrendt, 124 Hawai'i at 105, 237 P.3d at 1171 (acknowledging Dr. Bivens's testimony regarding delayed reporting and four "abuse processes" provided foundation for evidence of prior, uncharged sexual conduct with victim).

Finally, we reject Ragasa's argument that Dr. Bivens's testimony usurped the role of the jury by improperly bolstering CW's credibility about the dates of the uncharged and/or charged conduct. Dr. Bivens specifically testified that he had no knowledge about the facts of this case and was testifying to provide a general framework for understanding what can happen in a case of child sexual abuse. Ragasa cites nothing in the record supporting his assertion that Dr. Bivens opined on the facts of this case and we find no such testimony.

Accordingly, we conclude that the Circuit Court did not abuse its discretion in allowing Dr. Bivens's testimony.

(3) Ragasa contends that the Circuit Court violated his constitutional right to a unanimous jury verdict when it did not properly tailor an instruction to the jury that it must unanimously agree on which act constitutes the conduct element, i.e. the specific sexual act, for Count 1 and Count 2, under State v. Arceo, 84 Hawai'i 1, 928 P.2d 843 (1996). In Arceo, the supreme court held:

> [W]hen separate and distinct culpable acts are subsumed within a single count charging a sexual assault—any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the 'conduct' element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, i.e., an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

Id. at 32-33, 928 P.2d at 874-75.

Here, the Circuit Court provided the jury with a specific unanimity instruction as follows:

> The law allows the introduction of evidence for the purpose of showing that there is more than one act, omission, or item upon which proof of an element of an offense may be based. In order for the prosecution to prove an element, all twelve jurors must unanimously agree that the same act, the same omission, or possession of the same item has been proved beyond a reasonable doubt.

(Emphasis added).

Ragasa does not acknowledge this instruction on appeal and agreed to it without comment before the Circuit Court. Instead, he points to his objection to the State's Instructions 1 and 2, which stated the charges and set forth the elements of Counts 1 and 2. We conclude that the Circuit Court's instruction meets the requirements set forth in Arceo.[5] The jurors were instructed to "consider all the instructions as a whole and

---

[5]    We note that the Circuit Court's instruction is nearly identical to Instruction 8.02 of the Hawai'i Standard Jury Instructions—Criminal, which states:

> UNANIMITY INSTRUCTION—GENERIC
> The law allows the introduction of evidence for the purpose of showing that there is more than one [act] [omission] [item] upon which proof of an element of an offense may be based. In order for the prosecution to prove an element, all twelve jurors must unanimously agree that [the same act] [the same omission] [possession of the same item] has been proved beyond a reasonable doubt.

consider each instruction in light of all the others." We presume that the jury adhered to the Circuit Court's instructions. State v. Webster, 94 Hawai'i 241, 248, 11 P.3d 466, 473 (2000). Ragasa does not explain why this instruction, when read with the charging instructions on Count 1 and 2, is insufficient to instruct the jury regarding the specific unanimity requirement. The State did not need to make an election of which acts it was relying on for Counts 1 and 2 because the jury was properly instructed as to specific unanimity. Cf. State v. Jones, 96 Hawai'i 161, 29 P.3d 351 (2001).

We conclude that the Circuit Court did not err in instructing the jury as to specific unanimity.

(4)  Ragasa contends that the Circuit Court erred in denying his motion for judgment of acquittal on Counts 1 and 2. Regarding Count 1, Ragasa argues that "there was no evidence of any specific act of digital penetration during the relevant time frame." In her testimony at trial, CW distinguished between vaginal touching when she was thirteen and vaginal penetration when she was in ninth grade. Specifically, CW testified that Ragasa "put his finger in [her] vagina" during her ninth-grade year in high school, when she was fourteen or fifteen years old. She distinguished this act from other vaginal touching where Ragasa "did not really put his finger inside of [her]." She also testified that she knew certain acts occurred during ninth grade based on her recollection concerning school uniforms. Further detail regarding the time, place, or circumstance of the assault

goes to CW's credibility and "it is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence[.]" State v. Buch, 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996) (citation and internal quotation marks omitted). Credibility determinations are strictly within the province of the trier of fact. See State v. Eastman, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996). Viewed in a light most favorable to the State, CW's testimony was sufficient to support the jury's conviction of Ragasa as to the charge of Sexual Assault in the First Degree in Count 1.

There was also sufficient evidence to support Ragasa's conviction on the charge of Sexual Assault in the First Degree for penetration by fellatio in Count 2. CW testified that during ninth grade, Ragasa "wanted me to start giving him blow jobs" meaning "oral sex[,] [h]is penis in my mouth." She testified about a specific incident where Ragasa had CW give him a blow job, stating "[m]y sister left for work. He'd come wake me up and have me come to the room and he wanted me to do oral sex." CW stated that this happened in front of her sister's and Ragasa's bed. CW also testified that she told the police officer that the first act of fellatio occurred "maybe it was during my freshman year." Viewed in a light most favorable to the State, CW's testimony was sufficient to support the jury's conviction of Ragasa as to the charge of Sexual Assault in the First Degree in Count 2.

(5) Ragasa contends that the Circuit Court abused its discretion in denying his motion for new trial, which was based on post-conviction testimony by Ragasa's wife. Hawai'i Rules of Penal Procedure (**HRPP**) Rule 33 provides, in relevant part, that "[t]he court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." A motion for new trial based on newly discovered evidence will only be granted if:

> (1) the evidence has been discovered after trial; (2) such evidence could not have been discovered before or at trial through the exercise of due diligence; (3) the evidence is material to the issues and not cumulative or offered solely for purposes of impeachment; and (4) the evidence is of such a nature as would probably change the result of a later trial.

State v. Mabuti, 72 Haw. 106, 112-13, 807 P.2d 1264, 1268 (1991).

"In determining whether evidence is, in truth, newly discovered and whether sufficient diligence was used to learn of such evidence, the composite knowledge of both the accused and his counsel will be considered." State v. McNulty, 60 Haw. 259, 268, 588 P.2d 438, 445 (1978) (overruled on other grounds by State v. Eberly, 107 Hawai'i 239, 249, 112 P.3d 725, 735 (2005)). Thus, "evidence known to defendant's counsel before or at trial does not constitute newly discovered evidence justifying a new trial." Id. In McNulty, evidence of a witness's violent character was not "newly discovered" where defendant's trial counsel was aware that a witness's former counsel possessed information related to the witness's character, but chose not to call the former counsel to testify at the defendant's trial. Id.

Here, based on the post-trial testimony given by Ragasa's wife, Ragasa had access to the paperwork she produced after trial.  The record also shows that Ragasa was not in custody pending trial and that Ragasa and his counsel were fully aware of the issues raised by the proffered post-trial testimony of Ragasa's wife.  The Circuit Court did not err in concluding that Ragasa failed to show that the proffered evidence could not have been discovered before or at trial through the exercise of due diligence.  We conclude that the Circuit Court did not abuse its discretion in denying Ragasa's motion for new trial on the record in this case.

For these reasons, the Circuit Court's June 1, 2016 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, October 30, 2017.

On the briefs:

Daniel G. Hempey,
(De Costa Hempey Meyers, LLC),
for Defendant-Appellant.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge